## UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN DISTRICT OF OHIO

FILED

DEC 19 2024

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
YOUNGSTOWN

URE MEZU-CHUKWU, an Individual
3754 Sugarbush Drive
Canfield, OH 44406-9107



        Plaintiff,

vs.

MERCY HEALTH PHYSICIANS YOUNGSTOWN, LLC
Serve on:
Corporation Service Company
1160 Dublin Road, Ste 400
Columbus, OH 43215

**MAG. JUDGE HENDERSON**

BON SECOURS MERCY HEALTH, INC.
Serve on:
Corporation Service Company         )
3366 Riverside Drive, Ste 103         )
Upper Arlington, OH 43221

        Defendants.

Plaintiff, Ure Mezu-Chukwu, M.D., filing pro se (sometimes hereinafter, referred to as "Dr. Mezu-Chukwu" or "Plaintiff") brings this action against Bon Secours Mercy Health, Inc. (sometimes referred to as "Mercy" or "Mercy Health") and Mercy Health Physicians Youngstown, LLC, (sometimes referred to as "Mercy Health Physicians" and Defendants Does 1 to 10 and in support alleges as follows:

### BACKGROUND STATEMENT

1.     This complaint tells the story of the defendants' systematic takedown of the

1

Plaintiff's dignity, good name, reputation, job because she suffered a serious medical condition that necessitated her taking FMLA to take care of her health and for speaking out about patient safety concerns during her employment and unequal payment of wages based on her sex as a female.

## PARTIES

2.      Dr. Ure Mezu-Chukwu is a female, a natural person and a resident of the City of Canfield in Mahoning County in the State of Ohio and at all relevant times was a resident of the State of Ohio.

3.      Defendant, Bon Secours Mercy Health, Inc. is and at all relevant times a not-for-profit corporation that has its principal place of business in Ohio and does business as Bon Secours Mercy Health, Inc. in Ohio located at 1701 Mercy Health Place, Cincinnati, OH 45237.

4       Defendant, Bon Secours Mercy Health, Inc. employs more than 501 people, and at no time relevant to this complaint did it ever employ fewer than 15 persons.

5.      Defendant, Mercy Health Physicians Youngstown, LLC is and at all relevant times a limited liability company doing business in Ohio and whose address is 1044 Belmont Avenue, Youngstown, OH 44504.

6.      Defendant, Mercy Health Physicians Youngstown, LLC employs more than 501 people, and at no time relevant to this complaint did it ever employ fewer than 15 persons.

7.      At all relevant times, Mercy and Mercy Health Physicians employed Dr. Mezu-Chukwu.

2

8.   At all relevant times, Mercy has been a joint employer with Mercy Health Physicians where both defendants controlled the terms and conditions of employment of Dr. Mezu-Chukwu.

9. At all relevant times, the Mercy Health Physicians acted in conjunction as agents, alter ego of the Mercy.

10.   All acts and failures to act alleged herein were duly performed by and attributable to all Defendants, each acting as a successor, agent, alter ego, employee, indirect employer, joint employer, integrated enterprise, or under the direction and control of the others, except as specifically alleged otherwise. Said acts and failures to act were within the scope of such agency and/or employment, and each Defendant participated in, approved, and/or ratified the unlawful acts and omissions by the other Defendants complained of herein. Whenever and wherever reference is made in this Complaint to any act by a Defendant or Defendants, such allegations and reference shall also be deemed to mean the acts and failures to act of each Defendant acting individually, jointly, and/or severally.

11.  Mercy and Mercy Health Physicians acted in their capacities as the plaintiff's employers, managers, directors and supervisors.

12.   Plaintiff is ignorant of the true names and capacities of each defendant sued as DOES 1 through 10, inclusively, and therefore Plaintiff sues said defendants by fictitious names. Plaintiff reserves the right to amend the complaint to name each DOE defendant individually or corporately as it becomes known. Plaintiff alleges that each DOE defendant was in some manner responsible for the acts and omissions alleged herein and Plaintiff will amend the complaint to allege such responsibility

when the same shall have been ascertained by Plaintiff.

## JURISDICTION

13.     This action is brought pursuant to the Family and Medical leave Act ("FMLA") and the Equal Pay Act of 1963.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

14.     No exhaustion of remedies is required for FMLA claims and the Equal Pay Act of 1963.

15.     The FMLA claims were brought within the 3 years that the statute mandates for the filing of willful FMLA claims, the last willful violation being in November 2022.The Equal Pay claim was brought within the two years after the cause of action accrued. The act calls for three years for willful violation.

16.     Plaintiff is entitled to file pursuant to 28 USC ¶1391(b) and (c ) in the Northern District of Ohio where the employment practices alleged to be unlawful occurred and where the defendants operate their businesses and maintain the employment records relevant to such practices. The Complaint has been filed within the appropriate time and venue is proper.

## STATEMENT OF FACTS

17.     Dr. Ure Mezu-Chukwu is a black, African American female, African of Nigerian National Origin and a naturalized United States Citizen.

18.     She is a cardiac electrophysiologist and is board certified in Cardiology and

Electrophysiology.

19. She was hired to work as a cardiac electrophysiologist at Bon Secours Mercy Health and Mercy Health Physicians Youngstown, LLC. in Youngstown, Ohio on a three-year contract that started on December 30, 2019 and was expiring on December 31, 2022 with an option to renew by Bon Secours Mercy Health; Mercy Health Physicians Youngstown, LLC.

20. She started work at Mercy Health on December 30, 2019.

21. Dr. Mezu-Chukwu started college at 15 years of age at Morgan State University, Baltimore, Maryland. She attended to Ross University at 18 years of age where she earned her medical degree. She pursued her internal medicine residency at Cleveland Clinic, Ohio at the age of twenty-one.

22. She went on to do a Cardiovascular Disease and Electrophysiology Fellowship at the University of Pittsburgh Medical Center at Pittsburg, Pennsylvania.

23. As a board-certified Cardiologist and Electrophysiologist, she has served as the Women in Cardiology representative at the Pennsylvania chapter of the American College of Cardiology.

24. She was recognized by Indiana County Medical Society as a Top Physician Under 40 in the State of Pennsylvania in 2016.

25. She has authored and co-authored multiple papers focusing on demographics that are more often less represented in clinical trials: women, minorities and the elderly. She continues to work on highlighting issues that affect women in the workforce and her peer reviewed article, 'Balancing Motherhood, Maternity and Medicine' was published by the JAMA Cardiology further highlighting the immense work that needs

to be done in that area.

26. Dr. Mezu-Chukwu is passionate about underserved communities and via the Mezu International Foundation coordinates medical missions in rural parts of Africa. She is also a children's book author, motivational speaker and obtained her master's in business administration in December 2021.

27. She performed her duties at Mercy Health with diligence and was personally invited to serve in the Peer Review Committee, Medical Executive Committee, Medical Staff Quality/Patient Safety Committee by the President Dr Harley, Chief Medical Officer, Dr Kravec and Rod Neill (COO).

28. She never had any performance evaluation but received monthly production emails showing how many RVU's she produced for the organization even though she was on a guaranteed salary for three years.

29. She has been discriminated and retaliated against because of her race as African American; sex as a female; color - black and national origin – African of Nigerian national

30. Mercy and Mercy Health Physicians ("Defendants") retaliated against her because she took FMLA leave in 2022 for her very serious medical condition that required surgery. She was also denied reasonable accommodation when she came back to work and has continuously had unequal pay throughout her time at the defendants' employment.

31. Dr. Mezu-Chukwu was subjected to discrimination based on race, color and sex as the only black African American female of Nigerian national origin in the entire cardiology and electrophysiology department at Mercy Health that was made up of

seventeen non-black, non-Nigerian males at the time of hire in December 2019.

32. The defendants carried out these actions through their employees and agents creating a hostile work environment and severe emotional distress.

33. The defendants did not renew her contract after she came back from an approved FMLA leave.

34. Dr. Mezu-Chukwu was also discriminated and retaliated against by all the defendants as the only black, African American female of Nigerian national origin who spoke out against the safety concerns in the department.

35. In 2020, plaintiff had a meeting with Dr. Delatore who asked what could be done to improve the department as there was a lot of staff turnover, discord in the department, chaos, inability to do cases safely as defendants had no surgeon available during critical procedures despite it being a state mandated safety requirement.

36. Throughout 2021, these safety concerns and inadequacies continued, and a patient died in the Cardiology Department Cath lab during an interventional procedure performed by Dr. Kafa as no surgeon was available to operate on the patient who was perforated during a cardiac intervention by one of the interventionists around 11:00 a.m. on a Friday. The two surgeons had gone home and were not in the building.

37. Plaintiff states that if she had been one of the two surgeons that went home leaving a patient to die, her contract would have been terminated immediately. This is one of many instances of discrimination and disparate treatment that the plaintiff endured throughout her employment with the defendants.

38. Over the next year, plaintiff and the other electrophysiologists had several meetings with leadership citing the unsafe nature of the hospital (1) lack of surgical

back up, (2) inadequate anesthesia presence to safely do their cases and, (3) inadequate skilled nursing staff. They met as a team (the two electrophysiologists - Dr Tim Byrnes and Dr Khunnawat and Dr. Ure Mezu Chukwu)– plaintiff , being the only black female of Nigerian national origin.

39. Plaintiff and the two other electrophysiologists notified leadership that they would no longer be doing very complex cases as it was unsafe. Dr Schwartzman , a cardiologist /electrophysiologist who joined the department, left after a few months in 2021. He stated to leadership that he could not in good faith practice in an unsafe environment.

40. In February 2022, Dr. Mezu-Chukwu had an unexpected medical diagnosis and needed immediate surgery. She notified Dr Kravec, the Chief Medical Officer and the manager, Kurt Williams and Missy Shaver, a manager who was still employed by the defendants at the time.

41. Plaintiff was advised to have surgery immediately by her doctors.

42. Plaintiff started the FMLA process and went on approved FMLA and short-term disability on March 8, 2022 wherein she had her first surgery. While she was on FMLA leave, defendants through their agent, plaintiff's manager, Kurt Williams interfered with that leave when he texted plaintiff on May 2, 2022 and was asking when she would be back to work. Plaintiff suffered severe emotional distress during that period as she had to worry about the status of her employment rather than concentrating on recovering from her serious medical condition. Plaintiff also felt harassed and discriminated against.

8

43. In July 2022, Dr. Mezu-Chukwu required a second surgery. So, her approved leave was extended to September 1, 2022.

44. Dr. Mezu-Chukwu returned back to work on September 5, 2022 from her leave and saw full loads of patients. She requested for accommodation from her employers so that she could ease it into the work flow but her request was denied. Other similarly situated individuals such as Dr. Allan Katz who were not black African American females and not of Nigerian national origin received accommodation when they requested for it after they came back from FMLA leave/sick leave/surgery.

45. In March 2020, Dr Allan Katz, then Chief of electrophysiology was given accommodation by the defendants to work from home due to the pandemic and his history of kidney transplant. The defendants made numerous other accommodations for him. He was able to work from home seeing patients virtually during the entire period of the pandemic to avoid exposure to patients and staff due to his fear of contracting an illness because of his Kidney transplant. Plaintiff and Dr Khunnawat saw all the patients in the hospital, performed necessary surgeries on them for a period of many months. Dr Katz spoke to the patients on the phone for telehealth visits from the comfort of his home office, he saw hospitalized patients by speaking to them on the phone. He would relay any physical or necessary procedures, surgeries or in person evaluations that needed to be done to the plaintiff and Dr. Khunnawat and they performed these without any complaints and did what was best for the patients. The nursing staff in the hospital and office made themselves available to aid with the virtual assessments of these patients. This is again, another example of disparate treatment that the plaintiff was subjected to.

9

46. Dr. Mezu-Chukwu developed acute dizziness after a week of working under such onerous conditions, fresh out of two major surgeries. Plaintiff is not aware of any similarly situated individuals who were not black, female African American of Nigerian national origin that were forced to work under such conditions when they returned from FMLA/leave or surgery. Dr. Mezu-Chukwu's doctors advised her to take a few weeks of leave in order to recover from the acute dizziness that she developed due to the defendants' refusal to provide accommodation to her. Her doctors expected her to make a full recovery. She applied for a short-term disability and the defendants approved it. She went on leave on October 7, 2022.

47. During this leave just as during the plaintiff's FMLA leave, she received a text message on October 10, 2022 from her manager, the defendants' agent, Kurt Williams, inquiring again when she would be back to work. That had the effect of causing further emotional distress to her and she felt harassed and discriminated against as she was not aware of any other similarly situated electrophysiologists who were not black and not African American females and not of Nigerian national origin who received similar texts inquiring as to when they would be back to work when they were on leave recovering from their medical condition.

48. Dr. Mezu-Chukwu never had any negative performance issues, or any complaints from staff or patients. In fact, she mentored new hires such as Dr Tim Byrnes upon his hire in August 2020 as he was unable to do basic Electrophysiology procedures. Dr. Mezu-Chukwu assisted him in defibrillator implantation and ablations in order to maintain patient safety. Dr. Mezu-Chukwu drove from the defendants' clinic in Poland, Ohio back to the defendants' hospital in Youngstown, Ohio on many

10

occasions to do most of Dr. Byrnes' procedures with him.

49. Dr. Mezu-Chukwu also taught medical students and internal medicine training residents. She delivered multiple lectures to the internal medicine and family medicine residents and they had rotations with her multiple times a year. Dr. Mezu-Chukwu gave grand round lectures that were wonderfully received by the defendants' Internal Medicine department. Plaintiff received Institutional Review Board approval to evaluate minorities and the effects of COVID on cardiovascular disease in 2020.

50. In the continuing pattern of discrimination, as the only black African American female of Nigerian national origin, plaintiff's pay was not on par with her peers that had similar or even lower qualifications, all of whom were males.

51. Plaintiff was supposed to be paid for serving on peer review committees and other committees. She was also supposed to be paid for having multiple students rotate with her. Other similarly situated individuals who were not females received pay for serving on peer review committees and student rotations. Dr. Mezu-Chukwu was not paid.

52. On January 18, 2022, Dr. Mezu-Chukwu sent Mr. Gerald Morell, the Chief Financial Officer an email requesting reimbursement for participating in the Peer Review Committee in 2021; Med Staff Quality/Patient Safety Committee meetings in 2021; Resident Lecture in February 2021, April 2021 and September 2020; Peer Review Committee Meetings for 2021 and Resident Supervision for Dr. Oyidiya Osaka in August 2020 for two weeks. The last email that plaintiff received from him

11

regarding this matter was on January 19, 2022 where he stated that he would forward it for processing.

53. On three occasions, plaintiff reminded him about the reimbursements and was ignored. There has been no contact from anyone regarding the reimbursements. The last email that plaintiff sent to him about this matter was on December 8, 2022 to which there was no response.

54. The defendants' refusal to pay the plaintiff was willful.

55. Plaintiff was further retaliated for speaking up against the unsafe practices and working conditions at Mercy Health and for being the only black, female African American of Nigerian national origin in a sea of males who were not Africans of Nigerian national origin.

56. Plaintiff was enrolled in an MBA course from August 2020 to December 2021 to further her leadership and management skills. Plaintiff notified her manager, Melissa Shaver who did not file it for tuition reimbursement. Plaintiff had spent thousands of dollars and never got any reimbursement for her tuition payments despite escalating the complaint to the head office in Cincinnati, Ohio. Plaintiff was informed that even though the manager, Melissa Shaver mistakenly did not submit it for tuition reimbursement, she would not get any compensation. Her male counterparts were not denied tuition reimbursement especially, when it was the mistake of the manager. These are a few instances of the plaintiff not getting her due compensation.

57. Plaintiff was then given a non-renewal letter by Melissa Missy Russo in the presence of Samantha Rivalsky, the practice manager on November 11, 2022 after she came back her approved FMLA leave. Basically, the defendants stated that her

contract that would be ending on December 31, 2022 would not be renewed.

58. The defendants willfully took the adverse act of not renewing the plaintiff's

contract.

The defendants knew that not renewing the plaintiff's employment contract after she

came back from FMLA leave would cause harm, including economic harm

58. No reason was given to the plaintiff for the non-renewal. Other similarly situated

individuals who were not black, African Americans and not of Nigerian National

Origin did not receive non-renewal letters upon their return from FMLA leave or sick

leave.

59. Plaintiff believes that her contract was not renewed because she took FMLA leave

for her serious health condition; because she had requested for accommodation after

she came back from her leave and because of her sex as a female, color as black

African American and African of Nigerian national origin.

Plaintiff did not receive a verbal or written warning before she received notice of the

non-renewal of her contract on November 11, 2022.

60. Plaintiff filed for unemployment as the result of the non-renewal of her contract.

The defendants, not content with the discrimination, retaliation, denial of

accommodation resorted in defaming and disparaging Dr. Mezu-Chukwu's character

by falsely informing the Ohio Department of Job and Family Services that she was

discharged/fired due to poor performance and absence from work/tardiness which is a

blatant lie and an attack on Dr. Mezu-Chukwu's personal and professional reputation,

character and exceedingly damaging to her emotionally. Plaintiff appealed and the

Ohio Department of Jobs and Family Services specifically ruled that,

**"This Agency finds that the claimant was discharged without just cause, per Ohio Revised Code Section 4141.29(D)(a). The facts provided did not support the claimant was discharged by Bon Secours Mercy Health, Inc. on 12/31/2022 *for not being able to perform the required work*" (See attachments – Page 1 of the Determination of Unemployment Compensation benefits)**

Defendants, by their attacks, directly confirmed to the Ohio Department of Job and Family Services that they did not renew the plaintiff's contract due to her taking FMLA for her serious medical condition.

61. Plaintiff has suffered severe emotional distress, financial difficulties, loss of pay and benefits, humiliation in her professional status, as a result of all the discrimination, retaliation, harassment, denial of accommodation, unequal pay and defamation and character disparagement.

62. Plaintiff is seeking financial compensation, redress for all the wrongs and attorney fees and costs and any other reliefs that are appropriate.

## FIRST CAUSE OF ACTION
## (FMLA INTERFERENCE

63.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs, inclusive, as though set forth in full herein.

64.     Dr. Mezu-Chukwu was eligible for the protections of FMLA.

65.     The joint employers, Mercy and Mercy Health Physicians each have in excess of 501 employees.

14

66.    Dr. Mezu-Chukwu was entitled under the FMLA for the period that she sought to take care of her serious medical condition that required two surgeries.

67.    Dr. Mezu-Chukwu gave sufficient notice of her intent to take FMLA leave on March 8, 2022.

68.    The joint employers, through their agent, plaintiff's manager, Kurt Williams interfered with the plaintiff's FMLA leave by texting her on May 2, 2022 and inquiring as to when she would be back from work in violation of section 825.220 of FMLA regulations.

69.    The text has the effect of dissuading a reasonable person from taking the leave. Dr. Mezu-Chukwu was recovering from her serious medical condition and surgery and suffered severe emotional distress as a result of the text as she not only had to worry about her health but had to also worry about her employment. She felt harassed and discriminated against at a time she was on FMLA leave recovering from her surgery.

70. The defendants' willful violation of plaintiff's FMLA leave caused extreme pain and suffering to the plaintiff, interfering with her ability to fully care for herself after surgery and recover properly from her serious medical condition.

As a direct and proximate result of the defendants' wrongful conduct, Dr. Mezu-Chukwu is entitled to all the damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney fees.

## SECOND CAUSE OF ACTION
### (FMLA RETALIATION)

71.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs, inclusive, as though set forth in full herein.

72.    The willful and deliberate actions listed in all the preceding paragraphs and in this count were undertaken by the defendants acting as agents, officers, managers, supervisors, joint employers to retaliate against Dr. Mezu-Chukwu after she came back from her authorized FMLA leave. The willful acts started from November 20, 2020 continuing to November 11, 2022.

73.    The stated reasons for the Defendants' conduct were not the true reasons, but instead were pretext to hide the Defendants' retaliatory animus.

74.    Dr. Mezu-Chukwu was on an approved FMLA leave from February 2022 to May 2022 due to the serious medical condition that required surgery and months of recuperation.

75. While she was on FMLA, the defendants willfully interfered with her leave by insisting on when she was coming back even though they knew about her serious medical condition which was quite sudden.

76. After the plaintiff came back from FMLA leave, the defendants refused to renew the plaintiff's contract and used their agent, to deliver a letter of non-renewal of the plaintiff's contract at a time when she was seeing patients.

77. The defendants punished the plaintiff for taking FMLA leave by not renewing her

contract despite her excellent work performance.

78. Other similarly situated electrophysiologists who were not of the same race, sex, and not of the same color and national origin as the plaintiff were not punished by non-renewal of their contracts months after they came back from FMLA leave.

79.    Plaintiff believes and alleges that her use of the medical leave, engagement in protected activity were factors in Defendants' conduct as alleged herein above.

80.    Plaintiff suffered significant damages because of Defendants' unlawful discriminatory actions, retaliation, including emotional distress, past and future lost wages and benefits, and attorney fees, costs, and the costs of bringing this action.

81. As a direct and proximate result of the defendants' wrongful conduct, Dr. Mezu-Chukwu is entitled to all the damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney fees.

## THIRD CAUSE OF ACTION
## (EQUAL PAY)

82. Plaintiff re-alleges and incorporates by reference all preceding paragraphs, inclusive, as though set forth in full herein.

83. Equal Pay Act of 1963, states that it is unlawful for an employer to pay wages to employees of one sex at rates less than the rates paid to employees of the opposite sex.

84. Defendants discriminated against Dr. Mezu-Chukwu, a female electrophysiologist, by paying her lower wages than her male counterparts for performing substantially equal work

in the same exact position.

85. Since at least December 2021, Defendants have violated Sections 6(d)(1) and 15(a)(2) of the FLSA, 29 U.S.C. §§206(d)(1) and 215(a)(2), by paying Dr. Mezu-Chukwu wages at a rate less than it pays males who hold the same positions as Dr. Mezu-Chukwu.

86. Additionally, the Defendants denied reimbursements to Dr. Mezu-Chukwu for education courses – MBA program that she completed in December 2021 that were necessary to enhance her leadership and management skills. Her male counterparts who completed such leadership and management courses were reimbursed by the defendants.

87. Defendants denied pay to Dr. Mezu-Chukwu when she conducted student rotations even though her similarly situated male counterparts were paid for the same work.

88. Dr. Mezu-Chukwu was not paid for appearing on Peer-review committees when her male counterparts were paid for the same work.

89. The disparity in pay is based on sex because Dr. Mezu-Chukwu held the exact same position as the male electrophysiologists, a position that requires equal skill, effort and responsibility.

90. As a result of the actions complained of above, the Defendants unlawfully withheld and continue to withhold the payment of wages due to Dr. Mezu-Chukwu.

91. The unlawful practices complained of above were and are willful.

**PRAYER FOR RELIEF**

18

WHEREFORE, Plaintiff seeks judgment against Defendants and each of them, in an amount according to proof as follows:

1.     For a money judgment representing compensatory damages including lost wages, earnings, retirement benefits, and other employee benefits, and all other sums of money, together with interest on these amounts; for other special damages; and for general damages for mental pain and anguish and emotional distress and loss of earning capacity;

2.     For prejudgment interest on each of the foregoing at the legal rate from the date the obligation became due through the date of judgment in this matter;

WHEREFORE, Plaintiff seeks judgment against Defendants and each of them, in an amount according to proof as follows:

- For a declaratory judgment reaffirming Plaintiff's equal standing under the law and condemning Defendant's discriminatory practices;

- For punitive damages;

- Front pay;

- For injunctive relief barring Defendants' discriminatory pay policies and practices in the future;

- Compensatory Damages for non-renewal of her contract because of the FMLA leave, equitable relief for lifetime lost wages resulting therefrom;

19

- Compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of above, including but not limited to emotional pain, suffering, inconvenience and humiliation, in amounts to be determined at trial:

- Expungement of the negative and false reports in the Plaintiff's employment records;

- For costs of suit, and attorneys' fees;

- For Liquidated damages;

- For post-judgment interest; and

- For any other relief that is just and proper.

Dated: December 19, 2024

Respectfully Submitted,

Dr. Ure Mezu-Chukwu, pro se
3754 Sugarbush Drive
Canfield, OH 44406-9107
443 255 4540

## JURY DEMAND

Plaintiff respectfully requests a jury trial on all issues of law and facts raised by her complaint.

20

Dated: December 19, 2024                    Respectfully Submitted,

_____

Dr. Ure Mezu-Chukwu, pro se


## CERTIFICATION

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my

knowledge, information, and belief that this complaint: (1) is not being presented for an

improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the

cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for

extending, modifying, or reversing existing law; (3) the factual contentions have

evidentiary support or, if specifically so identified, will likely have evidentiary support

after a reasonable opportunity for further investigation or discovery; and (4) the complaint

otherwise complies with the requirements of Rule 11.


Dated: December 19, 2024                    Respectfully Submitted,

_____
Dr. Ure Mezu-Chukwu, pro se
3754 Sugarbush Drive
Canfield, OH 44406-9107


I agree to provide the Clerk's Office with any changes to my address where case-related

papers may be served. I understand that my failure to keep a current address on file with

the Clerk's Office may result in the dismissal of my case.

Dated: December 19, 2024

Respectfully Submitted,

Dr. Ure Mezu-Chukwu, pro se
3754 Sugarbush Drive
Canfield, OH 44406-9107

Notary Public — 12-19-2024

**Frank Scott**
Notary Public
State of Ohio
Certificate # 2015-RE-538988
My Commission Expires
July 20, 2025

22